Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT

for the

SOUTHERN District of MISSISSIPPI

SOUTHERN Division

SOUTHERN DISTRICT OF MISSISSIPPI
**F I L E D**

JUL 1 0 2024

ARTHUR JOHNSTON
BY _____ DEPUTY

)
)  Case No.   3:24-cv-396-TSL-ASH
)  *(to be filled in by the Clerk's Office)*
)

MR. ANTHONY DEUNDRA WILSON
_____
*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

MANAGEMENT & TRAINING CORPORATION - M.T.C
EAST MISSISSIPPI CORRECTIONAL FACILITY ADMIN
CAPTIN MR. SINGLETON
UNIT MANAGER MRS. WILLIAMS
_____
*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.  Do not include addresses here.)*

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name _Mr. Anthony DeAundra Wilson_

All other names by which you have been known: _Lil Ant or Lil Ant $$$_

ID Number _165705_

Current Institution _East Mississippi Correctional Facility_

Address _20642 Highway 80 West_

_Meridian_    _Miss_    _39307_
City    State    Zip Code

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

Name _Management & Training Corporation = MTC_

Job or Title *(if known)* _Management & Training Corporation = M.T.C_

Shield Number

Employer _Management & Training Corporation = MTC_

Address

_____/_____    _Utah_    _____
City    State    Zip Code

☑ Individual capacity    ☑ Official capacity

Defendant No. 2

Name _East Mississippi Correctional Facility Admin_

Job or Title *(if known)* _Corrections_

Shield Number

Employer _MTC - Management & Training Corporation_

Address _East Mississippi Correctional Facility_

_Meridian_    _Miss_    _39307_
City    State    Zip Code

☑ Individual capacity    ☑ Official capacity

Defendant No. 3
    Name                        _Capten MR. Singleton_
    Job or Title *(if known)*   _Captin_
    Shield Number
    Employer               _EMCF, MDOC AND, MTC_
    Address                _10641 Heghway 80 West_
                          _Meridian_      _MISS_     _39307_
                                  City            State      Zip Code
                         [ ] Individual capacity     [✓] Official capacity

Defendant No. 4
    Name                        _Unit Manager Mrs. Williams_
    Job or Title *(if known)*   _Unet (5) Unit Manager_
    Shield Number
    Employer               _EMCF, MDOC AND, M.T.C_
    Address                _10641 Heghway_
                          _Meridian_      _MISS_     _39307_
                                  City            State      Zip Code
                         [✓] Individual capacity     [✓] Official capacity

## II. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

     [ ] Federal officials (a *Bivens* claim)

     [✓] State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

1) Violation of 1st Amendment Right - Respects an Establishment of Religion
2) Violation of 8th Amendment Right - Excessive Bail shall not be required nor Excessive Fines to be imposed nor Cruel and unusual punishments to be inflicted.
3) Article XIII. - Slavery nor Involuntary Servitude shall exist...

                    **"SEE ATTACHED"** →

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials? No I am not suing under Bivens!

Pro se 14 (Rev. 12/16) Complaint For Violation of Civil Rights (Prisoner)

4) OFFENDER PROPERTY + PROPERTY DAMAGE
5) PREA - PRISON RAPE ELIMINATION ACT OF 2003
6) BRIBERY
7) FAVORITISM
8) RETALLATION
9) MALICIOUS INTENT
10) MENTAL, PHYSICAL, EMOTIONAL AND, SPIRITUAL INJURYS
11) OBSTRUCTION OF JUSTICE
12) VIOLATION OF PRIVACY
13) FALSE EMPRISONMENT
14) FALSEFYING DOCUMENTS
15) SEXUAL HARASSMENT
16) HARASSMENT
17) HOMOSEXUALITY
18) LIEN
19) C-5 GROUP ACTIVITY
20) STEALING
21) EXTORTION

*NOTE - I MR. ANTHONY DEUNDRA WILSON #165705 DOES HAVE 2 LAW SUITS AGAINST THIS EAST MISSESSIPPE CORRECTIONAL FACILITY. I KNOW THAT MY MR. BURL CAIN LAW SUIT IS ACTIVE. But I DON'T HAVE THE PAPERWORK ANY MORE DUE TO THE FACT THAT I PASSED OUT IN MY CELL ON THURSDAY, MAY, 30TH, 2024. I DID NOT ASK FOR NO MEDICAL TREATMENT AND, I DID NOT NEVER STATE THAT I WAS SUICIDAL AT ALL PERIOD. I WAS TAKING TO MEDICAL AND PLACKED ON AN E.V. DUE TO A LACK OF FLUID IN MY BODY. AND NURSE DUNN, MRS. EVULYN DUNN TOLD THEM TO PUT ME ON OBSERVATION. *NOT I HAVE MRS. EVULYN DUNN IN A LAW SUIT ALONG WITH THE UNIT MANAGER MRS. WILLIAMS AND, I ALSO HAVE MR. CAPTEN SINGLETON IN THE MR. BURL CAIN LAW SUIT BECAUSE HE WAS THE TRANSPORTATION DREVER WHO TRANSPORTED ME HERE TO THIS EAST MESS CORRECTIONAL FACILITY. MR. CAPTEN SINGLETON IS THE PERSON WHO ORDERED THE OFFICERS TO TAKE MY PROPERTY WITH ALL OF MY MAIL, LEGOL MAIL, AND MY 3 BIBLES AND, ALL OF MY OTHER RELEGIOUS MATERIALS THIS ALL COINSIPES WITH EVERYTHING THAT I HAVE BEEN WRITING ABOUT. ALL ALONG. THESE PEOPLE ARE TRYING TO USE ME TO GET THIS FACILITY ● OUT OF A $200,000 DEBT OR WHATEVER MUCH IT IS. AND, TRYING TO WELL THEY ARE VIOLATING MY CONSTITUTIONAL RIGHTS. ESPECIALLY THEY ARE VIOLATING MY NO 1 AND, ALL OF MY OTHER CONSTITUTIONAL RIGHTS THAT I HAVE LISTED. AND, THEY KEEP TRYING TO TALK TO ME IN MY CELL. AND, KEEP SAYING WE CAN'T KEEP TRYING TO TALK TO ME IN MY CELL. AND, KEEP TO SEE IF THE CELLS OUR FACELITY. I MR. ANTHONY DEUNDRA WILSON HATS THIS FACELITY AND I DON'T LIKE THIS FACELITY AT ALL PERIOD = END OF STATEMENT!!!

II. BASIS FOR JURISDICTION (B.)    CONTINUED FROM PAGE 3 of 11

`Pro Se 14 (Rev. 12/16) Complaint for violation of civil rights (prisoner)`

**NOTE—** I. MR. ANThony DeuJORA WILSON #265705 HAS ALSO BEEN TRYING TO SEND OUT MY **ORDER to SHow CAUSE** : SIGnATURES FOR ATTACHMENTS [5,6,7] But THEY THE ADMINISTRATION WONT SEND MY PAPERWORK OUT AND, THEY KEEP JUST KEEP SENDING IT BACK. ALL OF THE EVENTS THAT I WROTE ABOUT IN MY 2 LAWSUITS AND, IN ALL OF MY ARPS. I PROMISE TO GOD ALL OF THESE EVENTS ACTUALLY HAPPEND AND WERE HAPPENING AND, ARE STILL HAPPENING. THATS on MY GREAT GREAT GRANDMOTHERS GRAVE. SHE WAS 97 YEARS OLD WHEN SHE DIED AND, I LOVE HER TO DEATH. I WOULD HAVE TOOK HER PLACE TO DIE SO SHE COULD LIVE AND, I PUT ALL OF THIS on MY DAUGHTER. SHES ONLY 19 AND, I MISSED HER GRADUATION DUE TO THESE PEOPLE AND, THESE INMATES. THATS ~~my DAUGHTER~~ AND, SHES MY ONLY CHILD AND, THATS MESSED UP. !!! →END OF STATEMENT

**NOTE—** I MR. ANThony DeuJORA WILSON #265705 STATES AGAIN. I WAS BORN AUGUST, 22ND 1987 AND, I STARTED DOING TIME IN 1996 AND, ITS 2024 NOW. AND, I PROMISE TO GOD on MY DAUGHTER AND, on BIG MAMAS GRAVE THIS IS THE WORST TIME THAT I HAVE EVER DONE IN MY LIFE. I HAVE ALSO BESIDES THIS IN MY ADULESENT JUVENILE YEAR IN Montgommery, ALABAMA At THE JUVENILE DETENTION FACILITY on AIR BASE BCU. WHILE I WAS HOGG TIED BUTT NAKED on A COLD WET FLOOR THAT HAD ONLY SULFER SPRINKLER WATER on IT. I WAS LIKE THIS FOR 144 HOURS AT A TIME. AND, ONLY HAVING ONE CUFF TAKING OFF AND BEING GIVIN 5 MINUTES TO EAT. →END OF STATEMENT

**NOTE—** I HAVE BEEN REQUESTING PROTECTIVE CUSTODY But to no AVAIL. I ALSO HAVE ACTIVE RED TAGS AND, THE ADMINISTRATION STILL LETS THE UNIT(S) FLOOR WALKERS.... STILL COME AROUND MY CELL AND, THE STILL TRYS TO TALK TO ME IN MY CELL ALONG WITH SEVERAL OTHER MALE OFFICERS AND, INMATES AND OTHER FEMALE OFFICERS STEADILY TRYING to TELL ME ITS A phone IN THE WINDOW. I DONT TALK BACK TO THEM THOUGH. AND THEY STILL ASKING TO SEE MY PENIS. →END of STATEMENT

**NOTE—** NONE OF MY ARPS REMEDIES HAVE BEEN REQUISTED PERIOD EXCEPT 3 OR 4 AND, I HAVE WROTE LIKE 170 AND, ALL OF MY COPS COME UP MISSING. →END OF STATEMENT.

II. BASIS FOR JURISDICTION (B) CONTINUED FROM PAGE 3 of 21

"Administrative Remedy Program"

NAME:) MR. Anthony Deuwora Wilson #165105
DATE:) 4-4-24
TIME:) 3:45 P.M.
FACILITY:) East Mess Correctional FaciLoty, Unit (5), ALPHA Zone, CeLL 106
INCIDENT:) Violation of 8th Amendment Rights, Violation of 1st Amendment Rights, Violation of ARTICLE. XIII., Violation of PRIVACY, DISRESPECT Homosexualty, Sexual Harassment, Harresment, Harassment, BRIBERY, C-5 Group Activety, Conspiracy, Extortion, PREA - PRISON RapH ELiminaton Act of 2003/2024... AND OBSTRUCTION OF JUSTICE AND, FALSE IMPRISONMENT...

On the above date and, time I inmate Anthony D Wilson #165105. Was, Has and, Still is Being Deprived of my Rights. My 8th Amendment Right - Excessive Bail shall Not Be Required Nor Excessive FINES to Be imposed Nor Cruel and, Unusual Punishments to Be INFLICTED. I am still haveing problems with tthese mates/mans and, womens that are still trying to talk, interact and, socialize with me in my cell. Here at EMCF. In my I man Long Term Segregational cell. Inmate Unit (5) Floor walker J-Roc, Inmate Floor walker spoon. and, inmate Phantom who is Housed on Unit (5) S-DaLta that I have an Active R&D Tag on these 3 inmates and, I have a copy of them. I put R&D Tags on them Because tthey were trying to talk to me in private and, in Secret in my cell and, kept and, keeps on asking to see my phines and, trying to Force Homosexualty upon me along with LT. MR Naymas, Heavy C, and, the unit (5) unit MANAGER MRS. WiLLiams, Contract Monctur MRS. Allan, Sgt MRS. KiLLington, and, a sareks of others that are trying to Bribe me to Do ARTICLE. XIII. and, keeps trying to talk to me in PRIVATE and, in SecReT and, Disrespecting me and, Violateing my PRivacy and, trying to extort me in A conspered, C-5 Group Activety and, Iva also Been XCReaming PREA Due to Harassment, Sexual Harassment, and, all of tthese other incidents...

RELEEF:) That I Be left alone and, that tthese Offeecers and, inmate stop trying to Socialize with me in private and, in Secret and, that tthey stop trying to BRIBE me and, that I Be Released on my Senate Hush BeLL 2795 paroLa that I was granted on Dec 30th, 2022 or, that I Be transferred to another Facility immediately. Thank you and, May God Bless!!!

"SEEKING JUSTICE"

Respectfully
[signature]
4-4-24

From: Mr. Anthony D. Wilson #165705
70%
CLERK, U.S. DISTRICT OF MISSESSIPPI
501 E. Court St., STE 2.500
Jackson, MS 39201

Official Business

GREETINGS THIS IS A CORRESPONDANCE LETTER FROM MR. ANTHONY DEANDRA WILSON #165705. I HAVE BEEN RECEIVING ALL OF YOUR LETTERS BUT DUE TO ME BEING AN unfortunate, INDIGENT INMATE, ITS HARD FOR ME TO GET STAMPS AND, ALL OF THE MATERIALS THAT I NEED TO KEEP IN TOUCH WITH THE COURTS. ALSO I DO UNDERSTAND HOW SERIOUS OF A MATTER THIS IS BECAUSE IT IS DEALING WITH A SEX CRIMES AND, ALSO A MURDER THAT I WITNESSED HAPPEN BY THE HANDS OF INMATES. SINCE I'VE BEEN HERE AT THE EAST MISSISSIPPI CORRECTIONAL FACILITY. HERE IN MERIDIAN, MISSISSIPPI. I ALSO STILL DON'T COME OUT OF MY CELL AT ALL PERIOD FOR NOTHING. NO SHOWER OR ANYTHING. BECAUSE I AM IN FEAR OF MY LIFE HERE AT THIS FACILITY. AND, THEY ALSO HAVE A WARDEN NAMED MR. SMITH WHO WAS AT THE TIME THE UNIT MANAGER WHEN SCARFFACE WAS SODOMIZED AND, MURDER IN CELL 202 ON UNIT (5) S DELTA. AND HE MR SMITH ALSO HAVE HAD HIS HANDS ON THAT MURDER. ALSO I STILL HAVE THESE MALES AND, THESE WOMEN THAT ARE STEADILY TRYING TO TALK, INTERACT SOCIALIZE WITH ME IN MY CELL HERE AT EMCF. UNIT (5) ALPHA CELL 106. CT. MRS ELLIS, Sgt MRS BROOKS, Sgt MRS. WELLINGTON, CT. MS GILLS, CT MR. NAJMAS, WARDEN MR SMITH, UNIT MANAGER MRS. WILLIAMS WHO ALSO HAD SOMETHING TO DO WITH MR. SCARFFACES MURDER. SHE MRS. WELLIAMS WAS THE CASE MANAGER AT THE TIME, WHO MADE THE STATEMENT - WHY DID HE CUT HIS HAIR? AND, THAT NIGHT EARLY IN THE MORNING THAT INMATE WAS FOUND HANGING UP AT LUNCH, ALSO I HAVE INMATE J-ROC WHO'S THE UNIT (5) FLOOR WALKER THAT I HAVE AN ACTIVE RED TAG AGAINST AND ALSO INMATE GREENLAND WHO'S FLOOR WALKER SHOWN WHO I HAVE AN ACTIVE RED TAG AGAINST THAT ARE STEADILY TRYING TO BRIBE, MANIPULATE AND, PERSUADE ME TO DO SLAVERY AND INVOLUNTARY SERVITUDE WHICH IS A VIOLATION OF ARTICLE XIII: THEY KEEP STATING THAT WE WAS JUST TRYING TO GET YOU TO DO A LIL ART WORK FOR OUR FACILITY BEFORE THAT OLD WHITE LADY GETS HERE. TO SEE IF YOU LIKED OUR FACILITY, BECAUSE IF YOU LIKE OUR FACILITY THEN SHE IS GONNA HELP OUR WHOLE FACILITY, BUT I MR ANTHONY DEANDRA WILSON DOES NOT DO SLAVERY NOR INVOLUNTARY SERVITUDE AT ALL PERIOD. NOR DO I DO MODERN-DAY SLAVERY NOR MODERN-DAY INVOLUNTARY SERVITUDE AT ALL PERIOD. I HAVE REQUESTED FOR PROTECTIVE CUSTODY BECAUSE I DO NOT FEEL SAFE HERE AT THIS FACILITY

At 'all process, purchase i have witness that are already trying to talk to me in my cell in secret and in private. Now i ain't your LPA. i don't really hear them talking to much homosexually much lately but they do sometimes and, they be secretly asking to see my penis. respectively. (i.e.) Lt Mr Haymus, warden Mr Smith unit man-ager Ms Williams. And, these are the main people that are trying to get me to do slavery and involuntary servitude. But i said No.

JAMES, 5:12 · But above all, my brethern, do not swear, either by heaven or by earth or with any other oath, but let your "yes" be "yes" and your "No" "No" (lest you fall into judgement.

MATTHEW. 5:37 · But let your "yes" be "yes" and your "No". "No". For whatever is more than these is from the evil one.

So why do these people still try to talk to me in secret and in private. And, im still saying the same thing. Also inmate phantom on (5) delta who i have an aka rho tag against keeps trying to talk to me in my cell as well. And, the unit manager Ms Williams came to me about a month ago saying i heard you could draw can you come out and, draw a mural on the wall. i stated No, because i don't involuntary servitude or slavery at all purpose!!! And, i told that twice. Also i have males that are still trying to talk to me in secret and private, saying that we can't get through to this negga and, they are staying it right now at the moment. And the time is now 8.30 am, Sunday May. 19th. And these are my ORDER TO SHOW CAUSE! signatures for attachments [5,6,7]

ATTACHMENT 5 - Curtis D Wells 5 - 19 - 24
ATTACHMENT 6 - Curtis D Wells 5 - 19 - 24
ATTACHMENT 7 - Curtis D Wells 5 - 19 - 24

You should already have the original copys! Also i am still housed there at KMCF in cell unit (5) alpha zone cell 106.

Sincerely Curtis Wells

※
PS. · i also keep throwing males voices saying that if i knew that this negga knew how to do him to our facility. We would have never brought Curtis D Wells

Respectfully Curtis D Wells 5-19-24
Have a nice day and May God bless

| MISSISSIPPI DEPARTMENT OF CORRECTIONS | POLICY NUMBER 20-14 |
|---|---|
| | AGENCY WIDE |
| **PRISON RAPE ELIMINATION ACT OF 2003** | INITIAL DATE 10-01-2004 |
| **ACA STANDARDS:** 5-ACI-3D-08, 5-ACI-3D-09, 5-ACI-3D-10, 5-ACI-3D-11, 5-ACI-3D-12, 5-ACI-3D-13, 5-ACI-3D-14, 5-ACI-3D-15, 5-ACI-3D-16, 5-ACI-6C-14 | |
| **PREA STANDARDS:** 115.11 thru 115.17, 115.21, 115.22, 115.31 thru 115.35, 115.41, 115.42, 151.43, 115.51, 115.53, 115.54, 115.61 thru 115.68, 115.71, 115.72,115.73, 115.76, 115.77, 115.78, 115.81, 115.82, 115.83, 115.86, 115.87, 115.88, 115.89, 115.211, 115.212, 115.213, 115.215, 115.216, 115.221, 115.222, 115.231 thru 115.235, 115.241, 115.242, 115.251, 115.253, 115.254, 115.261 thru 115.267, 115.271, 115.272, 115.273, 115.276, 115.277, 115.278, 115.282, 115.283, 115.286, 115.287, 115.288, 115.289 | EFFECTIVE DATE 01-01-2021 |
| **STATUTES:** 97-3-97, 97-3-104 | **NON-RESTRICTED** | **PAGE 1 of 4** |

1  **POLICY:**
2
3   It is the policy of the Mississippi Department of Corrections (MDOC) to maintain a safe and
4   secure environment for all offenders/staff members with the objective of maintaining a zero
5   tolerance for prison rape and other forms of sexual misconduct in MDOC facilities as well as all
6   facilities that contract for the confinement of MDOC offenders.
7
8   **DEFINITIONS:**
9
10  Prison Rape Elimination Act of 2003 – The federal law establishing a zero tolerance approach to
11  sexual assault and sexual harassment.  Its purpose is to prevent, detect, and respond to sexual
12  abuse with regard to policy, personnel, and physical plant.
13
14  Staff – When used within the context of this policy, staff refers to all employees, contract
15  personnel and volunteers.
16
17  Sexual Assault – The physical coercion of any prohibited sexual act as imposed by one offender
18  upon another offender.
19
20  Sexual Perpetrator – An individual who engages in coercive, criminal or prohibited actions of a
21  sexual nature to include physical assault and/or verbal/nonverbal forms of sexual threats,
22  innuendos or harassment.
23
24  Sexual Misconduct – Includes offender-on-offender sexual assault, sexual abuse, sexual
25  harassment, and consensual sex acts. It also includes staff-on-offender sexual harassment,
26  staff sexual misconduct, and staff misconduct of a sexual nature.
27
28  Offender on Offender Sexual Abuse/Assault – One or more offenders engaging in, or attempting
29  to engage in unwanted sexual contact with another offender or the use of threats, intimidation,
30  inappropriate touching, or other actions and/or communications by one (1) or more offenders aid
31  at coercing and/or pressuring another offender to engage in a sexual act. Offender-on-offender
32  sexual abuse/assault includes consensual/nonconsensual acts and abusive sexual contacts.
33
34  Abusive Sexual Contact – Intentional touching, either directly or through the clothing, of the
35  genitalia, anus, groin, breast, inner thigh, or buttocks of any person.

*✱ NOTE –* [handwritten] | TITLE: PRISON RAPE ELIMINATION ACT OF 2003 | SOP NUMBER 20-14-01 |
EFFECTIVE DATE: 02-01-2015   NON-RESTRICTED   PAGE 24 OF 38

20-14 (e) 1117-ADULT Correctional Institutions: (MANDATORY) WRITTEN POLICY, PROCEDURE,
1128 AND PRACTICE protect offenders from PERSONAL ABUSE, CORPORAL
PUNISHMENT, PERSONAL INJURY, DISEASE, PROPERTY DAMAGE, AND
HARASSMENT [4-4281].

| TITLE:   PRISON RAPE ELIMINATION ACT OF 2003 | | POLICY NUMBER 20-14 |
|---|---|---|
| EFFECTIVE DATE: 01-01-2021 | NON-RESTRICTED | PAGE 2 of 4 |

36  <u>Staff Sexual Harassment</u> – Includes repeated verbal statements and comments of a sexual
37  nature to an offender by an employee, volunteer, contractor, official visitor, or other agency
38  representative. Sexual harassment includes demeaning references to gender, sexual
39  orientation, derogatory comments about the body, clothing, or repeated obscene language or
40  gestures.
41
42  <u>Staff Sexual Misconduct</u> – Any behavior or act of a sexual nature directed toward an offender by
43  an employee, volunteer, contractor, official visitor or other agency representative.
44
45  <u>Sexual Abuse</u> – Subjecting another person to any sexual act or contact between an employee,
46  volunteer, contractor, or agency representative, and an offender by force, persuasion,
47  inducement, or enticement.
48
49  <u>Nonconsensual Sex Act</u> – Contact of any person without his or her consent, or of a person who
50  is unable to consent or refuse.
51
52  <u>Exigent Circumstances</u> – Any set of temporary and unforeseen circumstances that require
53  immediate action in order to combat a threat to the security or institutional order of a facility.
54
55  <u>Intersex</u> – A person whose sexual or reproductive anatomy or chromosomal pattern does not
56  seem to fit typical definitions of male or female. Intersex medical conditions are sometimes
57  referred to as disorders of sex development.
58
59  <u>LGBTI</u> – An abbreviation for Lesbian, Gay, Bisexual, Transgender, Intersex, and Gender
60  Nonconforming.
61
62  <u>Gender Nonconforming</u> – A person whose appearance or manner does not conform to
63  traditional societal gender expectations.
64
65  <u>Transgender</u> – A person whose gender identity (internal sense of feeling male or female) is
66  different from the person's assigned sex at birth.
67
68  <u>Jails and Prisons</u> – Institutions.
69
70  **PRECEPTS:**
71
72  *Adult Correctional Institutions:*  **(MANDATORY) Written policy, procedure, and practice**
73  **protect offenders from personal abuse, corporal punishment, personal injury, disease,**
74  **property damage, and harassment [5-ACI-3D-08].**
75
76  *Adult Correctional Institutions:*  **Written policy, procedure, and practice ensure that**
77  **information is provided to offenders about sexual abuse/assault including:**
78
79  • **prevention/intervention**
80  • **self-protection**
81  • **reporting sexual abuse/assault**
82  • **treatment and counseling**
83
84  **The information is communicated orally and in writing, in a language clearly understood**
85  **by the offender, upon arrival at the facility [5-ACI-3D-09].**

✱NOTE – 1124 – REFERENCE POLICY 20.05, PROTECTION FROM HARM.

| TITLE:    PRISON RAPE ELIMINATION ACT OF 2003 | | POLICY NUMBER 20-14 |
|---|---|---|
| EFFECTIVE DATE: 01-01-2021 | NON-RESTRICTED | PAGE 3 of 4 |

86
87  *Adult Correctional Institutions:*  **Inmates are screened within 24 hours of arrival at the**
88  **facility for potential vulnerabilities or tendencies of acting out with sexually aggressive**
89  **behavior. Housing assignments are made accordingly [5-ACI-3D-10].**
90
91  *Adult Correctional Institutions:*  **Written policy, procedure, and practice require that an**
92  **investigation is conducted and documented whenever a sexual assault or threat is**
93  **reported [5-ACI-3D-11].**
94
95  *Adult Correctional Institutions:*   **Written policy, procedure, and practice require that**
96  **offenders identified as high risk with a history of sexually assaultive behavior are**
97  **assessed by a mental health or other qualified professional.  Inmates with a history of**
98  **sexually assaultive behavior are identified, monitored, and counseled [5-ACI-3D-12].**
99
100  *Adult Correctional Institutions:* **Written policy, procedure, and practice provide that**
101  **offenders identified as at risk for sexual victimization are assessed by a mental health or**
102  **other qualified professional. Inmates at risk for sexual victimization are identified,**
103  **monitored, and counseled [5-ACI-3D-13].**
104
105  *Adult Correctional Institutions:* **Written policy, procedure, and practice ensure that sexual**
106  **conduct between staff and inmates, volunteers, or contract personnel and inmates,**
107  **regardless of consensual status, is prohibited and subject to administrative and criminal**
108  **disciplinary sanctions [5-ACI-3D-14].**
109
110  *Adult Correctional Institutions:* **Written policy, procedure, and practice provide that inmates**
111  **who are victims of sexual abuse have the option to report the incident to a designated**
112  **staff member as well as others: duty officer/3rd party reporting/or safe helpline [5-ACI-3D-**
113  **15].**
114
115  *Adult Correctional Institutions:* **Written policy, procedure, and practice provide that all case**
116  **records associated with claims of sexual abuse, including incident reports, investigative**
117  **reports, offender information, case disposition, medical and counseling evaluation**
118  **findings, and recommendations for post-release treatment and/or counseling are**
119  **retained in accordance with an established schedule  of document retention [5-ACI-3D-**
120  **16].**
121
122  *Adult Correctional Institutions:*  **(MANDATORY) Victims of sexual assault are referred under**
123  **appropriate security provisions to a community facility for treatment and gathering of**
124  **evidence, or if these procedures are performed in-house, the following guidelines are**
125  **used:**
126
127  • **a history is taken by health care professionals who conduct an examination to**
128    **document the extent of physical injury and to determine if referral to another medical**
129    **facility is indicated. With the victim's consent, the examination includes the collection**
130    **of evidence from the victim, using a kit approved by the appropriate authority**
131  • **provision is made for testing of sexually transmitted diseases (for example, HIV,**
132    **gonorrhea, hepatitis, and other diseases) and counseling, as appropriate**
133  • **prophylactic treatment and follow-up for sexually transmitted diseases are offered to**
134    **all victims, as appropriate.**

20-14 (e)

| TITLE:    PRISON RAPE ELIMINATION ACT OF 2003 | | POLICY NUMBER 20-14 |
|---|---|---|
| EFFECTIVE DATE: 01-01-2021 | NON-RESTRICTED | PAGE 4 of 4 |

135   • following the physical examination, there is availability of an evaluation by a mental
136     health professional to assess the need for crisis intervention counseling and long-
137     term follow-up. A report is made to the facility or program administrator or designee
138     to assure separation of the victim from his or her assailant [5-ACI-6C-14].
139
140   The Deputy Commissioner of Institutions, the Deputy Commissioner of Community Corrections,
141   the Statewide PREA Coordinator or designees will develop procedures to assist in the
142   prevention of sexual assaults, and to govern reporting, treatment, and investigating all
143   allegations of sexual assault.
144
145   Procedures will also include separation of victims and perpetrators of an assault, and
146   discipline/prosecution of offenders who assault others. These procedures will be reviewed
147   annually and updated as needed.
148
149   **DOCUMENTS REQUIRED:**
150
151   As required by this policy and through the chain of command.

| ENFORCEMENT AUTHORITY | | |
|---|---|---|
| All standard operating procedures (SOPs) and/or other directive documents related to the implementation and enforcement of this policy will bear the signature of and be issued under the authority of the Deputy Commissioner of Institutions and the Deputy Commissioner of Community Corrections. | | |
| **Reviewed and Approved for Issuance** | *Pascal Vact*  General Counsel | *12/17/2020*  Date |
| | *signature*  Commissioner | *12/29/20*  Date |

| TITLE: PRISON RAPE ELIMINATION ACT OF 2003 | | SOP NUMBER<br>20-14-01 |
|---|---|---|
| EFFECTIVE DATE: 02-01-2015 | NON-RESTRICTED | PAGE 19 of 38 |

875  (d) The agency shall provide a method for staff to privately report sexual abuse and sexual
876  harassment of residents. PREA [§ 115.251]
877
878  The PREA Tip Line is a free confidential way for inmates/residents to report sexual assault and
879  sexual misconduct allegations.

880  The tip line can be accessed by the inmate/resident lifting the handset, selecting language
881  preference, entering the tip line number and leaving a two (2) minute recorded voice message.
882
883  A teletypewriter (TTY) phone is available for hearing impaired offenders.
884
885  *Adult Correctional Institutions:* **Written policy, procedure, and practice provide that**
886  **offenders who are victims of sexual abuse have the option to report the incident to a**
887  **designated staff member other than an immediate point-of-contact line officer [4-4281-7].**
888
889  <u>**Exhaustion of Administrative Remedies**</u>
890
891  ***Prisons and Jails:*** (a) An agency shall be exempt from this standard if it does not have
892  administrative procedures to address inmate grievances regarding sexual abuse.
893  (b)(1) The agency shall not impose a time limit on when an inmate may submit a grievance
894  regarding an allegation of sexual abuse.
895  (2) The agency may apply otherwise-applicable time limits to any portion of a grievance that
896  does not allege an incident of sexual abuse.
897  (3) The agency shall not require an inmate to use any informal grievance process, or to
898  otherwise attempt to resolve with staff, an alleged incident of sexual abuse.
899  (4) Nothing in this section shall restrict the agency's ability to defend against an inmate lawsuit
900  on the ground that the applicable statute of limitations has expired.
901  (c) The agency shall ensure that—
902  (1) An inmate who alleges sexual abuse may submit a grievance without submitting it to a staff
903  member who is the subject of the complaint, and
904  (2) Such grievance is not referred to a staff member who is the subject of the complaint.
905  (d)(1) The agency shall issue a final agency decision on the merits of any portion of a grievance
906  alleging sexual abuse within 90 days of the initial filing of the grievance.
907  (2) Computation of the 90-day time period shall not include time consumed by inmates in
908  preparing any administrative appeal.
909  (3) The agency may claim an extension of time to respond, of up to 70 days, if the normal time
910  period for response is insufficient to make an appropriate decision. The agency shall notify the
911  inmate in writing of any such extension and provide a date by which a decision will be made.
912  (4) At any level of the administrative process, including the final level, if the inmate does not
913  receive a response within the time allotted for reply, including any properly noticed extension,
914  the inmate may consider the absence of a response to be a denial at that level.
915  (e)(1) Third parties, including fellow inmates, staff members, family members, attorneys, and
916  outside advocates, shall be permitted to assist inmates in filing requests for administrative
917  remedies relating to allegations of sexual abuse, and shall also be permitted to file such
918  requests on behalf of inmates.
919  (2) If a third party files such a request on behalf of an inmate, the facility may require as a
920  condition of processing the request that the alleged victim agree to have the request filed on his
921  or her behalf, and may also require the alleged victim to personally pursue any subsequent
922  steps in the administrative remedy process.

| TITLE: PRISON RAPE ELIMINATION ACT OF 2003 | | SOP NUMBER 20-14-01 |
|---|---|---|
| EFFECTIVE DATE: 02-01-2015 | NON-RESTRICTED | PAGE 20 of 38 |

924 (3) If the inmate declines to have the request processed on his or her behalf, the agency shall
925 document the inmate's decision.
926 (f)(1) The agency shall establish procedures for the filing of an emergency grievance alleging
927 that an inmate is subject to a substantial risk of imminent sexual abuse.
928 (2) After receiving an emergency grievance alleging an inmate is subject to a substantial risk of
929 imminent sexual abuse, the agency shall immediately forward the grievance (or any portion
930 thereof that alleges the substantial risk of imminent sexual abuse) to a level of review at which
931 immediate corrective action may be taken, shall provide an initial response within 48 hours, and
932 shall issue a final agency decision within 5 calendar days. The initial response and final agency
933 decision shall document the agency's determination whether the inmate is in substantial risk of
934 imminent sexual abuse and the action taken in response to the emergency grievance.
935 (g) The agency may discipline an inmate for filing a grievance related to alleged sexual abuse
936 only where the agency demonstrates that the inmate filed the grievance in bad faith. **PREA [§**
937 **115.52]**
938
939 Reference MDOC Policy 20.08, Grievance Procedures.
940
941 **Community Corrections:** (a) An agency shall be exempt from this standard if it does not
942 have administrative procedures to address resident grievances regarding sexual abuse.
943 (b)(1) The agency shall not impose a time limit on when a resident may submit a grievance
944 regarding an allegation of sexual abuse.
945 (2) The agency may apply otherwise-applicable time limits on any portion of a grievance
946 that does not allege an incident of sexual abuse.
947 (3) The agency shall not require a resident to use any informal grievance process, or to
948 otherwise attempt to resolve with staff, an alleged incident of sexual abuse.
949 (4) Nothing in this section shall restrict the agency's ability to defend against a lawsuit filed
950 by a resident on the ground that the applicable statute of limitations has expired.
951 (c) The agency shall ensure that—
952 (1) A resident who alleges sexual abuse may submit a grievance without submitting it to a
953 staff member who is the subject of the complaint, and
954 (2) Such grievance is not referred to a staff member who is the subject of the complaint.
955 (d)(1) The agency shall issue a final agency decision on the merits of any portion of a
956 grievance alleging sexual abuse within 90 days of the initial filing of the grievance.
957 (2) Computation of the 90-day time period shall not include time consumed by residents in
958 preparing any administrative appeal.
959 (3) The agency may claim an extension of time to respond, of up to 70 days, if the normal
960 time period for response is insufficient to make an appropriate decision. The agency shall
961 notify the resident in writing of any such extension and provide a date by which a decision
962 will be made.
963 (4) At any level of the administrative process, including the final level, if the resident does
964 not receive a response within the time allotted for reply, including any properly noticed
965 extension, the resident may consider the absence of a response to be a denial at that level.
966 (e)(1) Third parties, including fellow residents, staff members, family members, attorneys,
967 and outside advocates, shall be permitted to assist residents in filing requests for
968 administrative remedies relating to allegations of sexual abuse, and shall also be permitted
969 to file such requests on behalf of residents. (2) If a third party files such a request on behalf
970 of a resident, the facility may require as a condition of processing the request that the
971 alleged victim agree to have the request filed on his or her behalf, and may also require the

| TITLE: PRISON RAPE ELIMINATION ACT OF 2003 | SOP NUMBER 20-14-01 |
|---|---|
| EFFECTIVE DATE: 02-01-2015 | NON-RESTRICTED | PAGE 21 of 38 |

972  alleged victim to personally pursue any subsequent steps in the administrative remedy
973  process.
974  (3) If the resident declines to have the request processed on his or her behalf, the agency
975  shall document the resident's decision.
976  (f)(1) The agency shall establish procedures for the filing of an emergency grievance
977  alleging that a resident is subject to a substantial risk of imminent sexual abuse.
978  (2) After receiving an emergency grievance alleging a resident is subject to a substantial
979  risk of imminent sexual abuse, the agency shall immediately forward the grievance (or any
980  portion thereof that alleges the substantial risk of imminent sexual abuse) to a level of
981  review at which immediate corrective action may be taken, shall provide an initial response
982  within 48 hours, and shall issue a final agency decision within 5 calendar days. The initial
983  response and final agency decision shall document the agency's determination whether the
984  resident is in substantial risk of imminent sexual abuse and the action taken in response to
985  the emergency grievance.
986  (g) The agency may discipline a resident for filing a grievance related to alleged sexual
987  abuse only where the agency demonstrates that the resident filed the grievance in bad faith.
988  **PREA [§ 115.252]**
989
990  **Inmate/Resident Access to Outside Confidential Support Services**
991
992  ***Prisons and Jails:*** (a) The facility shall provide inmates with access to outside victim advocates
993  for emotional support services related to sexual abuse by giving inmates mailing addresses and
994  telephone numbers, including toll-free hotline numbers where available, of local, State, or
995  national victim advocacy or rape crisis organizations, and, for persons detained solely for civil
996  immigration purposes, immigrant services agencies. The facility shall enable reasonable
997  communication between inmates and these organizations and agencies, in as confidential a
998  manner as possible.
999  (b) The facility shall inform inmates, prior to giving them access, of the extent to which such
1000 communications will be monitored and the extent to which reports of abuse will be forwarded to
1001 authorities in accordance with mandatory reporting laws.
1002 (c) The agency shall maintain or attempt to enter into memoranda of understanding or other
1003 agreements with community service providers that are able to provide inmates with confidential
1004 emotional support services related to sexual abuse. The agency shall maintain copies of
1005 agreements or documentation showing attempts to enter into such agreements. **PREA [§**
1006 **115.53]**
1007
1008 ***Community Corrections:*** (a) The facility shall provide residents with access to outside victim
1009 advocates for emotional support services related to sexual abuse by giving residents mailing
1010 addresses and telephone numbers, including toll-free hotline numbers where available, of local,
1011 State, or national victim advocacy or rape crisis organizations, and by enabling reasonable
1012 communication between residents and these organizations, in as confidential a manner as
1013 possible.
1014 (b) The facility shall inform residents, prior to giving them access, of the extent to which such
1015 communications will be monitored and the extent to which reports of abuse will be forwarded to
1016 authorities in accordance with mandatory reporting laws.
1017 (c) The agency shall maintain or attempt to enter into memoranda of understanding or other
1018 agreements with community service providers that are able to provide residents with confidential
1019 emotional support services related to sexual abuse. The agency shall maintain copies of

| TITLE: PRISON RAPE ELIMINATION ACT OF 2003 | | SOP NUMBER 20-14-01 |
|---|---|---|
| EFFECTIVE DATE: 02-01-2015 | NON-RESTRICTED | PAGE 22 of 38 |

1019    agreements or documentation showing attempts to enter into such agreements. **PREA [§**
1020    **115.253]**
1021
1022    <u>**Third-Party Reporting**</u>
1023
1024    ***Prisons and Jails:*** The agency shall establish a method to receive third-party reports of sexual
1025    abuse and sexual harassment and shall distribute publicly information on how to report sexual
1026    abuse and sexual harassment on behalf of an inmate. **PREA [§ 115.54]**
1027
1028    ***Community Corrections:*** The agency shall establish a method to receive third-party reports of
1029    sexual abuse and sexual harassment and shall distribute publicly information on how to report
1030    sexual abuse and sexual harassment on behalf of a resident. **PREA [§ 115.254]**
1031
1032    <u>**Staff and Agency Reporting Duties**</u>
1033
1034    ***Prisons and Jails:*** (a) The agency shall require all staff to report immediately and according to
1035    agency policy any knowledge, suspicion, or information regarding an incident of sexual abuse or
1036    sexual harassment that occurred in a facility, whether or not it is part of the agency; retaliation
1037    against inmates or staff who reported such an incident; and any staff neglect or violation of
1038    responsibilities that may have contributed to an incident or retaliation.
1039    (b) Apart from reporting to designated supervisors or officials, staff shall not reveal any
1040    information related to a sexual abuse report to anyone other than to the extent necessary, as
1041    specified in agency policy, to make treatment, investigation, and other security and
1042    management decisions.
1043    (c) Unless otherwise precluded by Federal, State, or local law, medical and mental health
1044    practitioners shall be required to report sexual abuse pursuant to paragraph (a) of this section
1045    and to inform inmates of the practitioner's duty to report, and the limitations of confidentiality, at
1046    the initiation of services.
1047    (d) If the alleged victim is under the age of 18 or considered a vulnerable adult under a State or
1048    local vulnerable persons statute, the agency shall report the allegation to the designated State
1049    or local services agency under applicable mandatory reporting laws.
1050    (e) The facility shall report all allegations of sexual abuse and sexual harassment, including
1051    third-party and anonymous reports, to the facility's designated investigators. **PREA [§ 115.61]**
1052
1053    ***Community Corrections:*** (a) The agency shall require all staff to report immediately and
1054    according to agency policy any knowledge, suspicion, or information regarding an incident of
1055    sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the
1056    agency; retaliation against residents or staff who reported such an incident; and any staff
1057    neglect or violation of responsibilities that may have contributed to an incident or retaliation.
1058    (b) Apart from reporting to designated supervisors or officials, staff shall not reveal any
1059    information related to a sexual abuse report to anyone other than to the extent necessary, as
1060    specified in agency policy, to make treatment, investigation, and other security and
1061    management decisions.
1062    (c) Unless otherwise precluded by Federal, State, or local law, medical and mental health
1063    practitioners shall be required to report sexual abuse pursuant to paragraph (a) of this section
1064    and to inform residents of the practitioner's duty to report, and the limitations of confidentiality, at
1065    the initiation of services.
1066    (d) If the alleged victim is under the age of 18 or considered a vulnerable adult under a State or
1067    local vulnerable persons statute, the agency shall report the allegation to the designated State
1068    or local services agency under applicable mandatory reporting laws.

| TITLE: PRISON RAPE ELIMINATION ACT OF 2003 | | SOP NUMBER 20-14-01 |
|---|---|---|
| EFFECTIVE DATE: 02-01-2015 | NON-RESTRICTED | PAGE 23 of 38 |

1069 (e) The facility shall report all allegations of sexual abuse and sexual harassment, including
1070 third-party and anonymous reports, to the facility's designated investigators. **PREA [§ 115.261]**
1071

1072 When an allegation of rape or sexual assault is made, the staff member who is made aware of
1073 the assault should notify the appropriate Unit Administrator immediately. An Incident Report,
1074 Extraordinary Occurrence Report (EOR) and PREA Offender Referral form will be completed by
1075 the end of the reporting officer's shift.
1076

1077 Staff at state, private, and regional facilities will generate all Extraordinary Occurrence Reports
1078 (EOR) and PREA Referral Forms on Offendertrak and forward through the chain of command.
1079

1080 The PREA Offender Referral Form can be electronically generated on Offendertrak by typing in
1081 the offender's DOC number and going to Reports>>>Person
1082 Documents>>>Documents>>>PREA Offender Referral Form.
1083

1084 The offender will be instructed by staff to complete an emergency request for administrative
1085 remedy.
1086

1087 All information regarding the assault will be forwarded to the Warden. The Warden or designee
1088 will review all documents and will complete a preliminary investigation.
1089

1090 All documents will be forwarded to the PREA Manager. Private and Regional facilities will
1091 forward all PREA related documents to the PREA Manager at their assigned parent facilities.
1092

1093 The PREA Offender Referral Form will be forwarded to the PREA Manager using the INBOX
1094 feature within Offendertrak.
1095

1096 CID will complete the investigation as required by CID investigation guidelines or direct an
1097 investigation by the appropriate authority and will report all findings in writing to the
1098 Superintendent's office for state prisons and to the Warden's office for private and regional
1099 facilities.
1100 Sexual perpetrators will be confined in administrative segregation pending investigation and
1101 disciplinary action.
1102

1103 Community Corrections shall take proper steps to insure any information received from a
1104 probationer/resident indicating sexual abuse or misconduct occurred during his/her
1105 confinement. An Incident Report, Extraordinary Occurrence Report (EOR) and a PREA
1106 Offender Referral form will be completed and the information will immediately be reported to the
1107 head of the facility or the PREA Manager where the alleged incident occurred.
1108

1109 **Agency Protection Duties**
1110

1111 **Prisons and Jails:** When an agency learns that an inmate is subject to a substantial risk of
1112 imminent sexual abuse, it shall take immediate action to protect the inmate. **PREA [§ 115.62]**
1113

1114 **Community Corrections:** When an agency learns that a resident is subject to a substantial risk
1115 of imminent sexual abuse, it shall take immediate action to protect the resident. **PREA [§
1116 115.262]**

| TITLE: PRISON RAPE ELIMINATION ACT OF 2003 | | SOP NUMBER 20-14-01 |
|---|---|---|
| EFFECTIVE DATE: 02-01-2015 | NON-RESTRICTED | PAGE 24 of 38 |

1117  *Adult Correctional Institutions:* **(MANDATORY) Written policy, procedure, and practice**
1118  **protect offenders from personal abuse, corporal punishment, personal injury, disease,**
1119  **property damage, and harassment [4-4281].**
1120
1121  Offenders within the MDOC are protected from harm in accordance to policy and procedures set
1122  forth by the department.
1123
1124  Reference Policy 20.05, Protection from Harm.
1125
1126  <u>Reporting To Other Confinement Facilities</u>
1127
1128  *Prisons and Jails:* (a) Upon receiving an allegation that an inmate was sexually abused while
1129  confined at another facility, the head of the facility that received the allegation shall notify the
1130  head of the facility or appropriate office of the agency where the alleged abuse occurred.
1131  (b) Such notification shall be provided as soon as possible, but no later than 72 hours after
1132  receiving the allegation.
1133  (c) The agency shall document that it has provided such notification.
1134  (d) The facility head or agency office that receives such notification shall ensure that the
1135  allegation is investigated in accordance with these standards. **PREA [§ 115.63]**
1136
1137  *Community Corrections:* (a) Upon receiving an allegation that a resident was sexually abused
1138  while confined at another facility, the head of the facility that received the allegation shall notify
1139  the head of the facility or appropriate office of the agency where the alleged abuse occurred.
1140  (b) Such notification shall be provided as soon as possible, but no later than 72 hours after
1141  receiving the allegation.
1142  (c) The agency shall document that it has provided such notification.
1143  (d) The facility head or agency office that receives such notification shall ensure that the
1144  allegation is investigated in accordance with these standards. **PREA [§ 115.263]**
1145
1146  <u>Staff First Responder Duties</u>
1147
1148  *Prisons and Jails:* (a) Upon learning of an allegation that an inmate was sexually abused, the
1149  first security staff member to respond to the report shall be required to:
1150  (1) Separate the alleged victim and abuser;
1151  (2) Preserve and protect any crime scene until appropriate steps can be taken to collect any
1152  evidence;
1153  (3) If the abuse occurred within a time period that still allows for the collection of physical
1154  evidence, request that the alleged victim not take any actions that could destroy physical
1155  evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating,
1156  defecating, smoking, drinking, or eating; and
1157  (4) If the abuse occurred within a time period that still allows for the collection of physical
1158  evidence, ensure that the alleged abuser does not take any actions that could destroy physical
1159  evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating,
1160  defecating, smoking, drinking, or eating.
1161  (b) If the first staff responder is not a security staff member, the responder shall be required to
1162  request that the alleged victim not take any actions that could destroy physical evidence, and
1163  then notify security staff. **PREA [§ 115.64]**
1164
1165  *Community Corrections:* (a) Upon learning of an allegation that a resident was sexually
1166  abused, the first security staff member to respond to the report shall be required to:

| TITLE: PRISON RAPE ELIMINATION ACT OF 2003 | | SOP NUMBER<br>20-14-01 |
|---|---|---|
| EFFECTIVE DATE: 02-01-2015 | NON-RESTRICTED | PAGE 25 of 38 |

1167 (1) Separate the alleged victim and abuser;
1168 (2) Preserve and protect any crime scene until appropriate steps can be taken to collect any
1169 evidence;
1170 (3) If the abuse occurred within a time period that still allows for the collection of physical
1171 evidence, request that the alleged victim not take any actions that could destroy physical
1172 evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating,
1173 defecating, smoking, drinking, or eating; and
1174 (4) If the abuse occurred within a time period that still allows for the collection of physical
1175 evidence, ensure that the alleged abuser does not take any actions that could destroy physical
1176 evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating,
1177 defecating, smoking, drinking, or eating.
1178 (b) If the first staff responder is not a security staff member, the responder shall be required to
1179 request that the alleged victim not take any actions that could destroy physical evidence and
1180 then notify security staff. **PREA [§ 115.264]**
1181
1182 **Coordinated Response**
1183
1184 *Prisons and Jails:* The facility shall develop a written institutional plan to coordinate actions
1185 taken in response to an incident of sexual abuse, among staff first responders, medical and
1186 mental health practitioners, investigators, and facility leadership. **PREA [§ 115.65]**
1187
1188 *Community Corrections:* The facility shall develop a written institutional plan to coordinate
1189 actions taken in response to an incident of sexual abuse, among staff first responders, medical
1190 and mental health practitioners, investigators, and facility leadership. **PREA [§ 115.265]**
1191
1192 **Preservation of Ability to Protect Inmates/Residents from Contact with Abusers**
1193
1194 *Prisons and Jails:* (a) Neither the agency nor any other governmental entity responsible for
1195 collective bargaining on the agency's behalf shall enter into or renew any collective bargaining
1196 agreement or other agreement that limits the agency's ability to remove alleged staff sexual
1197 abusers from contact with any inmates pending the outcome of an investigation or of a
1198 determination of whether and to what extent discipline is warranted.
1199 (b) Nothing in this standard shall restrict the entering into or renewal of agreements that govern:
1200 (1) The conduct of the disciplinary process, as long as such agreements are not inconsistent
1201 with the provisions of §§ 115.72 and 115.76; or
1202 (2) Whether a no-contact assignment that is imposed pending the outcome of an investigation
1203 shall be expunged from or retained in the staff member's personnel file following a
1204 determination that the allegation of sexual abuse is not substantiated. **PREA [§ 115.66]**
1205
1206 *Community Corrections:* (a) Neither the agency nor any other governmental entity responsible
1207 for collective bargaining on the agency's behalf shall enter into or renew any collective
1208 bargaining agreement or other agreement that limits the agency's ability to remove alleged staff
1209 sexual abusers from contact with residents pending the outcome of an investigation or of a
1210 determination of whether and to what extent discipline is warranted.
1211 (b) Nothing in this standard shall restrict the entering into or renewal of agreements that govern:
1212 (1) The conduct of the disciplinary process, as long as such agreements are not inconsistent
1213 with the provisions of §§ 115.272 and 115.276; or (2) Whether a no-contact assignment that is
1214 imposed pending the outcome of an investigation shall be expunged from or retained in the staff
1215 member's personnel file following a determination that the allegation of sexual abuse is not
1216 substantiated. **PREA [§ 115.266]**

20-14-01 (f)

| TITLE:  PRISON RAPE ELIMINATION ACT OF 2003 | | SOP NUMBER 20-14-01 |
|---|---|---|
| EFFECTIVE DATE:  02-01-2015 | NON-RESTRICTED | PAGE 26 of 38 |

1217  **Agency Protection against Retaliation**
1218
1219  ***Prisons and Jails:*** (a) The agency shall establish a policy to protect all inmates and staff who
1220  report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual
1221  harassment investigations from retaliation by other inmates or staff, and shall designate which
1222  staff members or departments are charged with monitoring retaliation.
1223  (b) The agency shall employ multiple protection measures, such as housing changes or
1224  transfers for inmate victims or abusers, removal of alleged staff or inmate abusers from contact
1225  with victims, and emotional support services for inmates or staff who fear retaliation for reporting
1226  sexual abuse or sexual harassment or for cooperating with investigations.
1227  (c) For at least 90 days following a report of sexual abuse, the agency shall monitor the conduct
1228  and treatment of inmates or staff who reported the sexual abuse and of inmates who were
1229  reported to have suffered sexual abuse to see if there are changes that may suggest possible
1230  retaliation by inmates or staff, and shall act promptly to remedy any such retaliation. Items the
1231  agency should monitor include any inmate disciplinary reports, housing, or program changes, or
1232  negative performance reviews or reassignments of staff. The agency shall continue such
1233  monitoring beyond 90 days if the initial monitoring indicates a continuing need.
1234  (d) In the case of inmates, such monitoring shall also include periodic status checks.
1235  (e) If any other individual who cooperates with an investigation expresses a fear of retaliation,
1236  the agency shall take appropriate measures to protect that individual against retaliation.
1237  (f) An agency's obligation to monitor shall terminate if the agency determines that the allegation
1238  is unfounded. **PREA [§ 115.67]**
1239
1240  ***Community Corrections:*** (a) The agency shall establish a policy to protect all residents and
1241  staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual
1242  harassment investigations from retaliation by other residents or staff and shall designate which
1243  staff members or departments are charged with monitoring retaliation.
1244  (b) The agency shall employ multiple protection measures, such as housing changes or
1245  transfers for resident victims or abusers, removal of alleged staff or resident abusers from
1246  contact with victims, and emotional support services for residents or staff who fear retaliation for
1247  reporting sexual abuse or sexual harassment or for cooperating with investigations.
1248  (c) For at least 90 days following a report of sexual abuse, the agency shall monitor the conduct
1249  and treatment of residents or staff who reported the sexual abuse and of residents who were
1250  reported to have suffered sexual abuse to see if there are changes that may suggest possible
1251  retaliation by residents or staff, and shall act promptly to remedy any such retaliation. Items the
1252  agency should monitor include any resident disciplinary reports, housing, or program changes,
1253  or negative performance reviews or reassignments of staff. The agency shall continue such
1254  monitoring beyond 90 days if the initial monitoring indicates a continuing need.
1255  (d) In the case of residents, such monitoring shall also include periodic status checks.
1256  (e) If any other individual who cooperates with an investigation expresses a fear of retaliation,
1257  the agency shall take appropriate measures to protect that individual against retaliation.
1258  (f) An agency's obligation to monitor shall terminate if the agency determines that the allegation
1259  is unfounded. **PREA [§ 115.267]**
1260
1261  **Post-Allegation Protective Custody**
1262
1263  ***Prisons and Jails:*** Any use of segregated housing to protect an inmate who is alleged to have
1264  suffered sexual abuse shall be subject to the requirements of § 115.43. **PREA [§ 115.68]**

| TITLE: PRISON RAPE ELIMINATION ACT OF 2003 | | SOP NUMBER 20-14-01 |
| --- | --- | --- |
| EFFECTIVE DATE: 02-01-2015 | NON-RESTRICTED | PAGE 27 of 38 |

1265   **Criminal and Administrative Agency Investigations**
1266
1267   ***Prisons and Jails:*** (a) When the agency conducts its own investigations into allegations of
1268   sexual abuse and sexual harassment, it shall do so promptly, thoroughly, and objectively for all
1269   allegations, including third-party and anonymous reports.
1270   (b) Where sexual abuse is alleged, the agency shall use investigators who have received
1271   special training in sexual abuse investigations pursuant to § 115.34.
1272   (c) Investigators shall gather and preserve direct and circumstantial evidence, including any
1273   available physical and DNA evidence and any available electronic monitoring data; shall
1274   interview alleged victims, suspected perpetrators, and witnesses; and shall review prior
1275   complaints and reports of sexual abuse involving the suspected perpetrator.
1276   (d) When the quality of evidence appears to support criminal prosecution, the agency shall
1277   conduct compelled interviews only after consulting with prosecutors as to whether compelled
1278   interviews may be an obstacle for subsequent criminal prosecution.
1279   (e) The credibility of an alleged victim, suspect, or witness shall be assessed on an individual
1280   basis and shall not be determined by the person's status as inmate or staff. No agency shall
1281   require an inmate who alleges sexual abuse to submit to a polygraph examination or other truth-
1282   telling device as a condition for proceeding with the investigation of such an allegation.
1283   (f) Administrative investigations:
1284   (1) Shall include an effort to determine whether staff actions or failures to act contributed to the
1285   abuse; and
1286   (2) Shall be documented in written reports that include a description of the physical and
1287   testimonial evidence, the reasoning behind credibility assessments, and investigative facts and
1288   findings.
1289   (g) Criminal investigations shall be documented in a written report that contains a thorough
1290   description of physical, testimonial, and documentary evidence and attaches copies of all
1291   documentary evidence where feasible.
1292   (h) Substantiated allegations of conduct that appears to be criminal shall be referred for
1293   prosecution.
1294   (i) The agency shall retain all written reports referenced in paragraphs (f) and (g) of this section
1295   for as long as the alleged abuser is incarcerated or employed by the agency, plus five years.
1296   (j) The departure of the alleged abuser or victim from the employment or control of the facility or
1297   agency shall not provide a basis for terminating an investigation.
1298   (k) Any State entity or Department of Justice component that conducts such investigations shall
1299   do so pursuant to the above requirements.
1300   (l) When outside agencies investigate sexual abuse, the facility shall cooperate with outside
1301   investigators and shall endeavor to remain informed about the progress of the investigation.
1302   **PREA [§ 115.71]**
1303
1304   ***Community Corrections:*** (a) When the agency conducts its own investigations into allegations
1305   of sexual abuse and sexual harassment, it shall do so promptly, thoroughly, and objectively for
1306   all allegations, including third-party and anonymous reports.
1307   (b) Where sexual abuse is alleged, the agency shall use investigators who have received
1308   special training in sexual abuse investigations pursuant to § 115.234.
1309   (c) Investigators shall gather and preserve direct and circumstantial evidence, including any
1310   available physical and DNA evidence and any available electronic monitoring data; shall
1311   interview alleged victims, suspected perpetrators, and witnesses; and shall review prior
1312   complaints and reports of sexual abuse involving the suspected perpetrator.

| | MISSISSIPPI DEPARTMENT OF CORRECTIONS | POLICY NUMBER 21-03 |
|---|---|---|
| | | AGENCY WIDE |
| | OFFENDER PROPERTY | INITIAL DATE 08-15-91 |
| ACA STANDARDS: 5-ACI-5A-06 thru 5-ACI-5A-08, 4-ACRS-7D-13, 4-ACRS-7D-14 | | EFFECTIVE DATE 05-15-2021 |
| STATUTES: 47-5-194 & 11-46-9 | NON-RESTRICTED | PAGE 1 of 4 |

1  **POLICY:**
2
3  It is the policy of the Mississippi Department of Corrections that offenders will be permitted to
4  retain in their possession specified personally owned property authorized in accordance with the
5  offender's custody status and security level.
6
7  **DEFINITIONS:**
8
9  Offender Personal Property - Articles of value legally owned by an offender (food items are
10  normally excluded unless present in such quantities as to interfere with the orderly running of
11  the institution).
12
13  Contraband Item - Any items not authorized by Mississippi Code, MDOC policy, procedure, or
14  post order.
15
16  Non-Allowable Items Receipt - A document that identifies the offender's personal property along
17  with the value placed on the property by the offender.
18
19  Property Receipt - A document that identifies property item(s) and acknowledges the receipt of
20  goods.
21
22  Personal Property Inventory Sheet - A document that identifies the offender's personal property
23  along with the value placed on the property by the offender and designated staff, upon arrival to
24  an offender's designated housing unit.
25
26  Disposal - The destruction or incapacitation of unauthorized offender property or donation of
27  said property to a registered charitable organization.
28
29  Custody and Security Level - The designation assigned to an offender that is based on risk and
30  behavior factors and used to determine housing and privileges
31
32  **PRECEPTS:**
33
34  *Adult Correctional Institutions:* **Written policy, procedure, and practice specify the personal**
35  **property inmates can retain in their possession [5-ACI-5A-05].**
36
37  *Adult Community Residential Services:* **Procedures specify the personal property that**
38  **offender can retain in their possession and govern the control and safeguarding of such**
39  **property [4-ACRS-7D-13].**
40
41  *Adult Correctional Institutions:* **Written policy and procedure govern the control of personal**

21-03 (e)

| TITLE:  OFFENDER PROPERTY | | POLICY NUMBER 21-03 |
|---|---|---|
| EFFECTIVE DATE: 05-15-2021 | NON-RESTRICTED | PAGE 2 of 4 |

42  property and funds belonging to inmates and are made available to inmates upon
43  admission and when updated [5-ACI-5A-06].
44

45  *Adult Community Residential Services:* **Personal property stored at the facility is itemized**
46  **on a written list that is signed by the offender, and kept in a permanent file. The offender**
47  **receives a copy listing the property retained for storage [4-ACRS-7D-14].**
48

49  *Adult Correctional Institutions:* **Written policy and procedure govern the control and**
50  **safeguarding of inmate personal property. Personal property retained at the institution is**
51  **itemized in a written list that is kept in the permanent case file; the inmate receives a**
52  **current copy of the list [5-ACI-5A-08].**
53

54  <u>Offender Appliances</u>

55

56  Effective August 01, 2003, **all appliances** not purchased through an MDOC canteen will be
57  considered non-allowable items and therefore prohibited.

58

59  *Community Corrections will be exempt from this precept and will operate under*
60  *procedures applicable to their unique correctional environments.*

61

62  <u>All Institutional, Private Prisons, and County Regional offenders will:</u>

63

64  • Purchase appliances through the MDOC commissary
65  • Purchase appliances as a special order
66  • Purchase appliances via the MDOC commissary from a DCI approved vendor

67

68  <u>Prohibition</u>

69

70  Hotpots will be banned as per the effective date of this policy.

71

72  *Community Corrections will be exempt from this precept and will operate under*
73  *procedures applicable to their unique correctional environments.*

74

75  <u>Confiscation</u>

76

77  Offender appliances will be confiscated and disposed of in accordance with applicable policies
78  and procedures when an offender is transferred to a facility that does not permit such
79  appliances.

80

81  A statement to this effect will be included on or in:

82

83  • Canteen order slips
84  • Property slips
85  • Offender handbook

86

87  <u>Inmate Shoes and Garments</u>

88

89  All Institutional, Private Prison, and County Regional offenders will:

21-03 (e)

| TITLE:  OFFENDER PROPERTY | | POLICY NUMBER 21-03 |
|---|---|---|
| EFFECTIVE DATE: 05-15-2021 | NON-RESTRICTED | PAGE 3 of 4 |

90
91  • Purchase personal shoes through the MDOC commissary
92  • Purchase personal shoes as a special order
93  • Purchase personal shoes via the MDOC commissary from a DCI approved vendor
94
95  Offenders will be limited to one pair of shoes, one pair of work boots and shower shoes.
96
97  Offenders returning from Court Order will be required to surrender personal shoes.
98
99  *Community Corrections will be exempt from this precept and will operate under*
100 *procedures applicable to their unique correctional environments.*
101
102 Religious Items
103
104 Religious items will be defined as holy books, Christian and Islamic paraphernalia, medallions,
105 and/or symbols.
106
107 All Institutional, Private Prison, and County Regional offenders will:
108
109 • Purchase religious Items through the MDOC commissary
110 • Purchase religious Items as a special order
111 • Purchase religious Items via the MDOC commissary from a DCI approved vendor
112
113 Religious medallions will only be made of plastic.
114
115 *Community Corrections will be exempt from this precept and will operate under*
116 *procedures applicable to their unique correctional environments.*
117
118 General
119
120 The Deputy Commissioner of Institutions and/or the Deputy Commissioner Community
121 Corrections or designees will ensure:
122
123 • Confiscation protocols are established.
124
125 • Protocols for the disposal of offender property are established.
126
127 • Offenders are provided with an allowable items list upon admittance to the Reception and
128    Classification Center.
129
130 • The control of personal property and funds belonging to inmates
131
132 • Limitations of offender property in accordance with their custody and security level.
133
134 • Personal Property Sheet for each offender is established.
135
136 • A maximum total dollar value of allowable personal property is established (i.e., property
137    sheet).

| TITLE:  OFFENDER PROPERTY | | POLICY NUMBER 21-03 |
|---|---|---|
| EFFECTIVE DATE:  05-15-2021 | NON-RESTRICTED | PAGE 4 of 4 |

138
139 &bull; Procedures specify the personal property that offender can retain in their possession and
140 govern the control and safeguarding of such property
141
142 &bull; The control and safeguarding of inmate personal property.  Personal property retained at the
143 institution is itemized in a written list that is kept in the permanent case file and the inmate
144 receives a current copy of the list
145
146 &bull; Personal property stored at the facility is itemized on a written list that is signed by the
147 offender, and kept in a permanent file.  The offender receives a copy listing the property
148 retained for storage
149
150 &bull; Policies and procedures are reviewed annually and updated as needed and are made
151 available to inmates upon admission and when updated
152
153 &bull; There are established Reception and Classification protocols for confiscation and deposit of
154 offender monies.
155
156 &bull; Offender monies are confiscated as contraband in MDOC institution, private or regional
157 facilities.
158
159 &bull; Establishment of Comptroller approved accounting procedures for the deposit and tracking
160 of confiscated monies in a Confiscated Funds Account.
161
162 &bull; There is a maximum watt usage per year allowable per offender.
163
164 **DOCUMENTS REQUIRED:**
165
166 As required by this policy and through the chain of command.

| **ENFORCEMENT AUTHORITY** | |
|---|---|
| All standard operating procedures (SOPs) and/or other directive documents related to the implementation and enforcement of this policy will bear the signature of and be issued under the authority of the Deputy Commissioner of Institutions and Deputy Commissioner of Community Corrections. | |
| **Reviewed and Approved for Issuance** | *Leonard Vincent*     5/5/2021 |
| | General Counsel        Date |
| | *Burl Cain*     5/6/21 |
| | Commissioner        Date |

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

*No I Am Not Sueing under Bevens!*

D.    Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

*No I Am Not Suing Under Bevens!*

## III.    Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- [ ] Pretrial detainee
- [ ] Civilly committed detainee
- [ ] Immigration detainee
- [x] Convicted and sentenced state prisoner
- [ ] Convicted and sentenced federal prisoner
- [x] Other *(explain)* 2795 But to No Avail, I Still Being Housed under False Impressonment...  *I was Granted parole on Dec, 30, 2022 under Senate House Bill*

## IV.    Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    If the events giving rise to your claim arose outside an institution, describe where and when they arose.

*No the Events to my Claim Deo Not Arese out an Instetution!*

B.    If the events giving rise to your claim arose in an institution, describe where and when they arose.

*"See Attached"*

Page 4 of 11

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

ON THURSDAY, MAY, 30TH, 2024 AT I don't know the exact time but it was around lunch time at around close to 10:00 A.M. that I MR. ANTHONY D. WILSON #165705 passed out in my cell here at the East Mississippi Correctional Facility, in Meridian, Mississippi here on unit (5) ALPHA ZONE, cell 106 I had my door jammed because I have been screaming about how I fear for my life every since I've been here at this facility. I was on the floor unresponsive and from what I heard when I woke up is that they had to call maintenance to come down and open my door up. Nobody is supposed to have been setting close to me. Because my cell (5) IN DANGER And I have been requesting protective custody, and, I have red tags that are active. When I came to I heard captain Mr. Singleton state to the officers to take my property. I pleaded, didn't have much. But it was more of my legal work and my religion. * NOTE- It was an statement that was made in 2022 or in 2023 by a male officer and the west (5) floor walker J-Roc. that I have an active red tag against that (he doesn't want to do notthing. But read the bible all day) anyways I was escorted to medical even after I tried to refuse and, I was put at an F.U. due to the lack of fluid in my body. I was also placed on observation in a paper gown on suicide and I never even stated that I was suicidal. * NOTE- The physc nurse Mrs. Evelyn Dunn is the person who placed me on observation and, she is also one of the defendants in my WILSON V. JACKSON law suit, WILSON V. JACKSON et al (3:84-CV-00210 -HTW-ASH), along with unit manager MRS. WILLIAMS, ALSO CAPTIN MR. SINGLETON, the officers that were present on the screen to take my property, out of my cell due to my door being jammed. unet manager MRS. WILLIAMS stated to me on Sunday, May 2nd 2024 that I would get my property back Monday, May 3RD, 2024 but to no avail.

[large redacted/blacked-out section]

know where my property is and they can't find it. But everyone here that actually does something and goes to suicide or floods or set fires has gotten their property back. Even people who has thrown stuff on officers. So what makes my property or me different from them or their property. I only had an medical emergency and I tried to bring me a bible but I declined and said I wanted my property and he state another time that I was but to so thank. also the unit (5) floor walker j-Roc the records dept. or the case manager

IV. STATEMENT OF CLAIM (B). CONTINUED FROM PAGE 4 of 11

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

C.    What date and approximate time did the events giving rise to your claim(s) occur?

ON THURSDAY, MAY, 30th, 2024 AT APPROXIMATELY 10:00 AM CLOSE to LUNCH.

D.    What are the facts underlying your claim(s)? (For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?) I MR. ANTHONY D WILSON #165705 PASSED OUT IN MY CALL DOOR to A MEDICAL EMERGENCY, FROM LACK OF BODY FLUID. MY DOOR WAS JAMMED, MAINTENANCE BROKEN IN, CAPTAIN MR. SINGLETON WAS ENVOLED AND, THE PUSH NURSE MRS EVELYN DUNN AND, OFFICER SGT JORDAN, AKA GOLD MOUTH, AND THE MENTAL HEALTH DOCTOR MRS. CAMERON AND, ALSO OFFICER MR. SCOTT who HELPED TRANSPORT ME to MEDICAL. CAPTAIN MR. SINGLETON CAME IN ABOUT 2 OR 3 TIMES ACTING LIKE HE WAS JUST REALLY SO CONCERNED ABOUT ME, REMEMBER I NEVER ASK to GO to MEDICAL OR to SUICIDE, I AM NOT SUICIDAL AT ALL PERIOD!!! AND I AM NOT FRIENDLY AT ALL PERIOD I DON'T DEAL WITH NO ANY AND EVERY BODY!!!.

V.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive. I MR. ANTHONY DEUNORA WILSON #165705 SUFFERS FROM PROPERTY LOSS. I DON'T WANT NO OTHER STUFF I WANT ALL OF MY PROPERTY BACK BECAUSE MY FAMILYS NUMBERS ARE IN MY BIBLE AND, I HAVE FAMILY MAIL. AND ALL OF MY LEGAL WORK AND, MY MAIL FROM THE COURTS AND, THES IS A VERY SERIOUS ISSUES to. ME, I ALSO SUFFER FROM MENTAL, PHYSICAL, EMOTIONAL AND, SPIRITUAL INJURYS. I SUFFER FROM RETALICATION, I SUFFER FROM PREA I SUFFER FROM VIOLATION OF PRIVACY, I SUFFER FROM FAVORITZSM. I SUFFER FROM MALICIOUS INTENT, VIOLATION OF 1ST AMENDMENT, 8TH AMENDMENT, ARTICLE XIII. AND, FALSE IMPRISONMENT AND, I MESSED MY DAUGHTERS GRADUATION LAST YEAR ON MAY, 28, 2023

VI.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims. I MR. ANTHONY DEUNORA WILSON #165705 WANTS $7,000,000,000,000 FOR MY LOST PROPERTY - PROPERTY DAMAGE. I WANT A $1,000,000,000,000 FOR VIOLATION OF 1ST AMENDMENT RIGHT. I WANT $8,000,000,000,000 FOR VIOLATION OF 8TH AMENDMENT RIGHT. I WANT $13,000,000,000,000 FOR VIOLATION OF ARTICLE XIII, I WANT $4,000,000,000,000 FOR PREA. I WANT $7,000,000,000,000,000 FOR BRIBERY. I WANT $9,000,000,000,000 FOR FAVORITISM. I WANT $11,000,000,000,000 FOR RETALICATION, I WANT $3,000,000,000,000,000 FOR VIOLATION OF PRIVACY. I WANT $8,000,000,000,000 FOR MENTAL, PHYSICAL, SPIRITUAL, AND EMOTIONAL INJURYS. I WANT $9,000,000,000,000 FOR OBSTRUCTION OF JUSTICE, I WANT $7,000,000,000,000 FOR SEXUAL HARASSMENT, I WANT $7,000,000,000,000 FOR LIEN, I WANT $17,000,000,000,000 FOR TRYING TO FORCE HOMOSEXUALITY UPON ME. I WANT $5,000,000,000,000 FOR C-S GROUP ACTIVITY, I WANT $10,000 A DAY FOR FALSE IMPRISONMENT. AND, I WANT THE EAST MISSISSIPPI CORRECTIONAL FACILITY to LOSE THE MTC CONTRACT. AND, I WANT $11,000,000,000,000 FROM MTC FOR BEING THE CONTRACTOR OF THES FACILITY.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

**VII.    Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☑ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

East Mississippi Correctional Facility
Unit 5, Alpha Zone, cell 106
10641 Highway 80 West
Maridan, Mississippi 39307

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☑ Yes

☐ No

☐ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☑ Yes

☐ No

☐ Do not know

If yes, which claim(s)? They only covered like 3 or 4 of them but only for false imprisonment and they say anything any of my other issues that I wrote about

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☑ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☑ Yes

☐ No

E.    If you did file a grievance:

1.    Where did you file the grievance?

_Wilkinson County Correctional Facility_

2.    What did you claim in your grievance?

_PRRA Violation of 8th Amendment_

3.    What was the result, if any?

_They tended to my grievances but I dismissed them myself_

4.    What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

_Cffkr I said I Dismissed them at that facility cause they were trying to help me._

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

F.     If you did not file a grievance:

    1.    If there are any reasons why you did not file a grievance, state them here:

_____ N/A _____

    2.    If you did not file grievance but you did inform officials of your claim, state who you informed,
          when and how, and their response, if any:

THE ENCF ADMINISTRATION TOLD ME TO
SEE TO IT MYSELF AND REFERD TO TALK TO ME AND,
PLAY WITH ME IN MY CELL ALL DAY AND, NIGHT AND,
TRIED TO FORCE HOMOSEXUALITY UPON ME

G.     Please set forth any additional information that is relevant to the exhaustion of your administrative
       remedies.

SEE ATTACHED A.R.P.S #S 3 OF THEM.

_____

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your
administrative remedies.)*

## VIII. Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying
the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility,
brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous,
malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent
danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☑ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

MY CASES HAVE NOT BEEN DISSMISSED.

"ADMINISTRATIVE REMEDY PROGRAM"

NAME:) MR. Anthony DEWNDRA Wilson #165705
DATE:) SUNDAY, JUNE, 9TH, 2024
TIME:) 6:00 A.M.
FACILITY:) SMCF, MAREDEAN MESS, ALPHA ZONE, CALL. 106

FINDINGS:) VIOLATION OF 8TH AMENDMENT, VIOLATION OF 1ST AMENDMENT.
PROPERTY DAMAGE, BRIBERY, FAVORITISM, RETALIATION, MALICIOUS
INTENT, MENTAL, PHYSICAL, EMOTIONAL AND, EMOTIONAL INJURYS,
VIOLATION OF ARTICLE. XIII, OBSTRUCTION OF JUSTICE... LIEN

On THE ABOVE DATE AND, TIME AT APPROXIMATELY
6:00 AM On SUNDAY, JUNE, 9TH, 2024. I INMATE Anthony DEWNDRA
Wilson #165705 WAS, WAS AND STILL IS BEING DEPRIVED OF MY
RIGHTS - MY 8TH AMENDMENT RIGHTS - EXCESSIVE BAIL SHALL NOT
BE REQUIRED NOR EXCESSIVE FINES to BE IMPOSED NOR CRUEL
AND, UNUSUAL PUNISHMENTS to BE INFLICTED. On THURSDAY,
MAY, 30TH, 2024 AT I DON'T KNOW THE EXACT TIME BUT IT WAS AROUND
LUNCH TIME THAT I PASSED OUT IN MY CELL THERE AT PEMCF. IN
MAREDEAN, MESS IN UNIT (5) ALPHA ZONE CALL. 106. I HAD MY
DOOR JAMMED AND, I HAD to GO to MEDICAL I WAS PLACED
ON IV. DUE to A LACK OF FLUID IN MY BODY. I WAS
ALSO PLACED ON OBSERVATION IN SECTION WHEN I NEVER EVEN
STATED THAT I WAS SUICIDAL. By THE PYSHC NURSE MRS.
Evelyn Dunn. * NOTE - She MRS. DUNN IS IN MY LAW SUIT
ALONG WITH UNIT MANAGER MRS. WILLIAMS AND Capton
MR SANDERS WHO ORDERED OFFICERS to TAKE MY PROPERTY.
UPON MY ARRIVAL BACK to MY CELL ALL OF MY MAIL, LEGAL
MAIL AND, ALL 3 OF MY BIBLES AND, ALL OF THE CEL HYGIENE
THAT I HAD WAS GONE. I DIDN'T DO ANYTHING to HAVE MY
PROPERTY TAKEN.

RELIEF:) THAT I RECEIVE MY LEGAL MAIL, MAIL AND, ALL
3 OF MY BIBLES BACK AND, THAT I BE REMOVED
AWAY FROM this FACILITY IMMEDIATELY thank you AND, MAY
GOD BLESS.

"SEEKING JUSTICE"

Respectfully:
6-9-24

ADMINISTRATIVE REMADY PROGRAM

NAME:) MR. ANTHONY DEWNDRA WELSON #165705
DATE:) SUNDAY, 9TH, JUNE, 2024
TIME:) 5:00 AM
FACILITY:) EAST MISSISSIPPI CORRECTIONAL FACILITY, MERIDIAN, MISS. ALPHA ZONE, CELL=106
INCIDENT:) VIOLATION OF 8TH AMENDMENT, ARTICLE XIII., PREA-PRISON RAPE
ELEMENATION ACT OF 2003. BRIBERY, VIOLATION OF PRIVACY, VIOLATION OF 1ST
AMENDMENT, HOMOSEXUALITY, RETALIATION, FAVORITISM, MALICIOUS INTENT,
MENTAL, PHYSICAL, EMOTIONAL AND, SPIRETUAL INJURYS, SEXUAL HARRASSMENT,
OBSTRUCTION OF JUSTICE. C-5 GROUP ACTIVITY, PROPERTY DAMAGE.

On THE ABOVE DATE AND, TIME ON SUNDAY, JUNE 9TH 2024. AT
APPROXIMATELY 5:00 AM. I INMATE MR. ANTHONY DEWNDRA WELSON #165705
WAS, HAS AND STILL IS BEING DEPRIVED OF MY RIGHTS=MY 8TH AMENDMENT
RIGHT. EXCESSIVE BAIL SHALL NOT BE REQUIRED NOR EXCESSIVE FINES TO
BE IMPOSED NOR CRUEL AND UNUSUAL PUNISHMENTS TO BE ENFLECTED.
I HAVE THE INMATE GRIER AND, WHITE UNIT (5) FLOOR WALKER CLUB
TRYING TO TALK TO ME IN MY CELL ASKING TO SEE MY BODY AND,
STRANGELY, SAYING, THATS FUCKED UP THAT YOU CAN'T DO ANYTHING IN
OUR FACILITY. AND, HES STRANGELY TRYING TO TALK, INTERACT AND,
SOCIALIZE WITH ME IN SECRET AND, IN PRIVATE CHILD AND,
THE INMATE FLOOR WALKER O-ROC. AND, THE GUYS TRY TO TALK
TO ME ALL NIGHT IN A C-5 GROUP ACTIVITY. AND, I DON'T
EVEN KNOW THESE DUDES EVEN IF I DID KNOW THEM
I WOULDN'T DEAL WITH THEM AT ALL. AND, THEY STRANGELY TRYING
TO TALK TO ME ABOUT SOME MONEY AND SOME LIL OLE WHITE
LADY WHOS SUPPOSEDLY IS COMING TO SEE IF I OWNED THIS
FACILITY. AND, THATS WHY THEY ARE TRYING TO BRIBE ME TO OR ART
WORK. BUT I BEEN SAID NO, NO, NO, NO, NO, NO, NO AND, THATS
WHAT I MEANT.

RELIEF:) THAT I BE REMOVED AWAY FROM THIS FACILITY
IMMEDIATELY AND, THAT I RECEIVE ALL OF MY MAIL,
LEGAL MAIL, AND ALL 3 OF MY BIBLES BACK AND,
THAT I BE LEFT ALONE PERIOD. THANK YOU AND, GOD
BLESS

"SEEKING JUSTICE"

Respectfully; M____ ____ 6-9-24

"ADMINISTRATIVE REMEDY PROGRAM"

NAME:) MR. ANThONy DEUNDRA WILSON #165705

DATE:) WEDNESDAY, JUNE, 5TH, 2024

TIME:) 12:30 P.M.

FACILITY:) EMCF, MERIDIAN, MISS. ZONE, ALPHA, CELL - 106

INCIDENT:) VIOLATION OF 8TH AMENDMENT, ARTICLE XIII., BRIBERY, PROPERTY DAMAGE, FALSE IMPRESINMENT, VIOLATION OF PRIVACY, FAVORITISM, RETALIATION, MALICIOUS INTENT, MENTAL, PHYSICAL, SPIRITUAL AND, EMOTIONAL INJURYS, FALSIFYING DOCUMENTS, VIOLATION OF 1ST AMENDMENT, PREA = PRISON RAPE ELIMENATION ACT OF 2003... OBSTRUCTION OF JUSTICE... VIOLATION OF 1ST AMENDMENT... HOMOSEXUOCITY, SEXUAL HARASSMENT.

on THE ABOVE DATE AND, TIME, WEDNESDAY, JUNE, 5TH, 2024 AT APPROXIEMATWELY 12:30 P.M. I MR. ANThONy DEUNDRA WILSON #165705 WAS HAS AND, STECL IS BEING DEPRIVED OF MY RIGHTS - MY 8TH AMENDMENT RIGHT = EXCESSIVE, BAIL SHALL NOT BE REQUIRED NOR EXCESSIVE FINES TO BE IMPOSED NOR CRUEL AND UNUSUAL PUNISHMENTS TO BE INFLICTED. I HAVE CAPTEN MR SINGLETON AND, UNIT MANAGER MRS. WILLIAMS, ILLEGALLY LIEN ABOUT MY PROPERTY (EKA THEY CAN'T FIND IT, MY LEGAL WORK AND, MY 3 BIBLES. I HAVE 2 ACTIVE LAWSUITS IN ON THE EMCF IN MERIDIAN MISS. AND UNIT MANAGER MRS. WILLIAMS IS ON THE WILSON V. JACKSON ET AL (3:24-CV-00210-HTW-ASH) AND, CAPTEN MR. SINGLETON IS ON MY WILSON V. (AIN LAWSUIT. ALSO UNIT MANAGER MRS. WILLIAMS AND, CAPTEN MR. SINGLETON IS STILL TRYING TO GET ME TO GO AGAINST MY CONSTETUTIONAL RIGHT ARTICLE XIII. SLAVARY NOR INVOLUNTARY SERVITUDE. ALSO THE 2 ARE STILL TRYING TO GET CERTAIN FLOOR WALKERS TO PAY ME TO PAINT A MURAL ON THE WALL. AND STEADILY SAYING THAT THE OLD LADY SAYS THAT YOU OO SOME OF THE BEST ARTWORK SHES EVER SEEN IN HER LIFE, AND THEY ALSO KEEP ASKING TO SEE MY PENIS. I REMEMBER I STATED ON THE YARD ONE TIME (LAST YEAR THAT I DON'T DO SLAVARY OR INVOLUNTARY SERVITUDE. AND, MR. CAPTEN SINGLETON STATED THAT ILL FIND HIM SOME WHERE ELSE TO GO, BUT WHEN HE LOOKED IN THE COMPUTER. HE MADE A GRUSOME DISCOVERY. AND, HE MR. CAPTEN SINGLETON ALSO KEEPS STATING THAT HE KNOWS MY FATHER AND, MY FAMILY. AND, I NEVER EVEN MET DUDE. SO NOW WHAT THEY ARE DOING IS TRYING TO HOLD MY LEGAL MAIL, MAIL AND, MY 3 BIBLES AS LEVERAGE. TO HELP THEM WHEN IM NOT EVEN SUPPOSED TO BE IN THIS FACILITY AT ALL PERIOD. BY THE WAY IT DOESN'T MATTER WHAT FLOOR WALKER THEY SENT WITH THE PROPOSITION. THE 2 MAIN PEOPLE HERE THAT ARE AND, HAVE BEEN OBSTRUCTING JUSTICE AND, DOING ALL OF THIS OTHER FOUL STUFF IS UNIT MANAGER MRS. WILLIAMS AND, CAPTEN MR. SINGLETON. I DID NOT FLOOD, NOR SET NO FIRES, NOR THROW FECES, NOR ASSAULT ANYONE. I PASSED OUT IN MY CELL. SO WHY? WOULD THEY TAKE MY LEGAL MAIL AND MY HOLY BIBLE

RELIEF:) THAT I BE REMOVED AWAY FROM THIS FACILITY IMMEDIATELY AND THAT I RECIEVE MY LEGAL WORK AND, MY 3 HOLY BIBLE'S BACK AND, THAT THESE PEOPLE QUIT ASKING ME TO DRAW, PAINT, AND GO AGAINST ARTICLE XIII. THANK YOU AND, GOD BLESS

"SEEKING JUSTICE"                    Respeatnely:) MR. AnThony D Wilson 6-5-24

A.  Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☑ Yes

☐ No

B.  If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below.  *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1. Parties to the previous lawsuit

   Plaintiff(s)  _MR. ANTHONY DEWDRA WILSON_

   Defendant(s)  _"SEE ATTACHED"_

2. Court *(if federal court, name the district; if state court, name the county and State)*

   _CLARK, UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF MISSISSIPPI_

3. Docket or index number

   _3-24-CV-00820-HTW-ASH -AND I DON'T HAVE THE PAPERWORK FOR MY BURL CAIN LAW SUIT DUE TO PROPERTY DAMAGE_

4. Name of Judge assigned to your case

   _MAGISTRATE JUDGE MICHAEL T. PARKER_

5. Approximate date of filing lawsuit

   _I THINK IT WAS IN FEBRUARY OR APRIL_

6. Is the case still pending?

   ☑ Yes

   ☐ No

   If no, give the approximate date of disposition.  _THE CASES ARE STILL PENDING_

7. What was the result of the case? *(For example: Was the case dismissed?  Was judgment entered in your favor?  Was the case appealed?)*

   _I HAVE NOT BEEN TO COURT YET_

C.  Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment? _JUST 2 AND, NOW THIS IS THE 3RD ONE_

☑ Yes

☐ No

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below.  *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit

Plaintiff(s) _Mr. Arthur Drunders Wilson_

Defendant(s) _Mr. Burl Cain, EMCF Administration, MTC -Management Straining_
_Corporation, Captain Mr. Sexton, and Sgt. Mr. Robinson (Bold Head)_

2.    Court *(if federal court, name the district; if state court, name the county and State)*

_Clerk, United States District Court Southern District of Messissippe_

3.    Docket or index number

_I don't have the # due to property damage and, I don't remember_
_because I don't have my mail from the courts._

4.    Name of Judge assigned to your case

_I don't remember due to property damage, and, I don't have my mail_
_from the courts._

5.    Approximate date of filing lawsuit

_January or February I think_

6.    Is the case still pending?

☑ Yes

☐ No

If no, give the approximate date of disposition    _The case is still pending_

7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

_I have not been to court yet_

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

**(B.)**

**1. Parties to Previous Lawsuits**

DEFENDANT(S)   WARDEN MR. JACKSON
                CAPTEN MR. MCQUIRREY
                LT. MR. HOLLINGSHEAD
            SECURITY WARDEN MR. ANDREWS
            CHIEF OF SECURITY MAJOR PERRY
            CONTRACT MONITOR MRS. ALLEN
            UNIT MANAGER MRS. WILLIAMS
            LT. MR POLLARD
            PHYSC NURSE MRS. DUNN
            SUPERINTENDENT MR. RONKING
            Sgt MS. T. MOSLEY

AND I DON'T REMEMBER THE DOCKET OR INDEX NUMBER
TO MY MR. BURL CAIN LAWSUIT —

    BUT THE DEFENDANT(S) ARE

        DEFENDANT(S)
                MR. BURL CAIN
                EAST MISS CORRECTIONAL ADMINISTRATION
            MTC - MANAGEMENT 3 TRAINING CORPORATION
            CAPTEN MR. SINCLAIN
            AND, Sgt MR. ROBINSON (BOLD HEAD)

## IX.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    _WEDNESDAY, JUNE, 19th 2024_

Signature of Plaintiff    _[signature]_

Printed Name of Plaintiff    _Mr. Anthony Delinda Wilson_

Prison Identification #    _165705_

Prison Address    _10642 Hwy 80 West Unit (5), Alpha Cave, Cell 206_

_MEREDIAN_          _Mess_        _39307_
     *City*             *State*      *Zip Code*

### B.    For Attorneys

Date of signing:    _____

Signature of Attorney    _____

Printed Name of Attorney    _____

Bar Number    _____

Name of Law Firm    _____

Address    _____

_____
     *City*         *State*      *Zip Code*

Telephone Number    _____

E-mail Address    _____